UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 NOV 14  PM 4: 21

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 03-2061 |
| | ) | |
| CENTURY MANAGEMENT, LLC, | ) | |
| FRED TILLMAN, and McDONALD'S | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

By consent of the parties to this Decree, it is hereby ORDERED, ADJUDGED, and DECREED that:

1.      On January 30, 2003, Plaintiff United States of America filed this action pursuant to Title III of the Americans with Disabilities Act (hereinafter "the ADA"), 42 U.S.C. § 12181 *et seq.,* naming Century Management, LLC as a defendant. On February 21, 2003, the United States filed an Amended Complaint adding Fred Tillman as a defendant. On October 15, 2003, the United States filed a Second Amended Complaint adding McDonald's Corporation as a defendant.

2.      The Second Amended Complaint alleges that Ada Anderson, an adult resident of the Western District of Tennessee, has multiple impairments, including reflex sympathetic dystrophy requiring her to wear a leg brace, that substantially limits her ability to walk or engage in other major life activities and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102 and 28 C.F.R. § 36.104.

3.      The Second Amended Complaint alleges that  Defendant Century Management, LLC ("CMI") operates McDonald's brand restaurants, which are open to the public, and a portion

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

of which are located in the Western District of Tennessee, and, as such, owns, leases, leases to, or operates a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. § 36.104.

4.      The Second Amended Complaint alleges that Defendant Fred Tillman ("Tillman") is the franchise holder of the restaurants operated by CMI, and, as such, owns, leases, leases to, or operates places of public accommodation within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. § 36.104.

5.      The Second Amended Complaint alleges that Defendant McDonald's Corporation owns and/or leases the real property housing all McDonald's brand restaurants operated by CMI and of which Tillman is the franchisee, and, as such, owns, leases, leases to, or operates places of public accommodation within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. § 36.104. This action was brought to enforce Title III against CMI, Tillman, and McDonald's Corporation.

6.      The Second Amended Complaint alleges that CMI, Tillman and McDonald's Corporation violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and the implementing regulation, 28 C.F.R. Part 36. Specifically, the Second Amended Complaint alleges that at the McDonald's brand restaurants owned, leased, or operated by CMI and Tillman and identified in Attachment A to this Consent Decree (hereinafter "Restaurant List"), CMI, Tillman and McDonald's Corporation have failed to remove architectural barriers to access to the extent that removal of such barriers is readily achievable, as that term is used in 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304.

2

7.      In addition the Second Amended Complaint alleges that on March 26, 2000, Ms. Ada Anderson, while visiting a McDonald's brand restaurant located at 4237 Elvis Presley Blvd., Memphis, Shelby County, Tennessee, attempted to use the restroom in the restaurant. The Second Amended Complaint alleges that, because there was no accessible stall, Ms. Anderson used a narrow stall with an in-swinging stall door and no grab bars, which caused her to stumble and fall while attempting to turn around in the stall. The complaint alleges that Ms. Anderson suffered physical and emotional injuries as a result. This restaurant visited by Ms. Anderson has since closed but, at the time of the incident, the restaurant was open for business and Plaintiff alleges that it was owned and operated by CMI and Tillman as described above.

8.      Prior to filing suit, Plaintiff's counsel conducted an investigation, including visits to a number of the restaurants, and allegedly found elements not in compliance with the ADA Standards for Accessible Design, 28 C.F.R. pt. 36, App. A ("the Standards"). In addition, since filing suit, Plaintiff's expert witness visited each restaurant on the Restaurant List and allegedly found elements not in compliance with the Standards which would prevent persons with disabilities from fully and equally enjoying the restaurants' goods, services, privileges, facilities, and/or accommodations. Plaintiff asserts that some or all of these barriers to access are and would have been readily achievable to remove. CMI, Tillman and McDonald's Corporation deny these allegations.

9.      CMI, Tillman and McDonald's Corporation deny the allegations of the Second Amended Complaint, and they deny that they have violated Title III of the ADA or the implementing regulations. CMI and Tillman further state that CMI and Tillman have removed certain alleged architectural barriers and by means of this Decree agree to remove additional alleged architectural barriers in order to provide further access to individuals with disabilities.

3

10.    This Court has jurisdiction of this action pursuant to 42 U.S.C. § 12182 *et seq.* and 42 U.S.C. §§ 1331 and 1345.

11.    With respect to the restaurants on the Restaurant List, CMI and Tillman agree to make the structural changes identified in Attachment B to this Consent Decree (the "Modification List") and, where applicable, as provided in the corresponding drawings in Attachment C to this Consent Decree, within 36 months of the effective date of this Consent Decree. Except to the extent otherwise agreed by Plaintiff, CMI and Tillman, to the extent any drawings provided do not indicate ADA-relevant measurements, the Modifications required by this Decree shall comply with the applicable provisions in the Standards. All dimensions covered by this Decree are subject to the construction tolerances of § 3.2 of the Standards. The required modifications are summarized as follows. All citations, except where noted, are to the Standards. All structural changes set forth in this Decree are subject to all applicable codes, approvals, licenses, permits, *etc.* Plaintiff and CMI and Tillman agree to make reasonable efforts and to cooperate in obtaining all such items.

11.1    CMI and Tillman shall make modifications to parking lots, as specified in the Modification List.

11.2    CMI and Tillman shall make modifications to exterior routes from parking and public sidewalks to the entrances, as described in the Modification List, so that each restaurant, as set forth on the Modification List, will have at least one accessible route between these points and one accessible entrance.

11.3    CMI and Tillman shall make modifications to exterior signage at all restaurants on the Restaurant List so that each restaurant has: 1) entrance signage complying with §§ 4.1.2(7)(c) & 4.30.7 of the Standards identifying accessible entrances, including a sign with the International Symbol of Accessibility that is at least 6" in size; 2) directional signage

4

complying with § 4.1.2(7)(c) at all inaccessible entrances, indicating the location of an accessible entrance; and 3) and other directional signage as indicated on the Modification List.

11.4    CMI and Tillman shall make modifications so that the self-service condiment and tableware dispensers at each restaurant on the Restaurant List: 1) are within the 54" reach range permitted by Figure 6(b) or 6(c) of the Standards or § 4.34.3 of the Standards; and 2) allow dispensing by one hand. CMI and Tillman shall do so by lowering counters, affixing backstops to counters to secure dispensers at the front of counters, and/or lowering dispensers, at CMI and Tillman's option, as indicated on the Modification List.

11.5    CMI and Tillman shall make modifications to the dining areas, as described in the Modification List, so that there are a sufficient number of and properly dispersed accessible tables on accessible routes.

11.6    CMI and Tillman shall make modifications to entrances to Playland areas, as described in the Modification List.

11.7    CMI and Tillman shall modify restrooms, as described in the Modification List and corresponding drawings in Attachment C, such that both the men's and women's restrooms have a standard accessible stall.

11.8    CMI and Tillman shall modify restaurants, as described in the Modification List and corresponding drawings in Attachment C, to have an accessible unisex/family restroom and the corresponding signage.

11.9    CMI and Tillman shall make any other restroom modifications described in the Modification List.

11.10   CMI and Tillman shall lower urinals, as described in the Modification List, to be no more than 17" high to the bottom rim, as required by § 4.18.2 of the Standards.

5

11.11 CMI and Tillman shall modify or replace hand dryers, as described in the Modification List, such that no dryers protrude more than 4" into a circulation path, as required by § 4.4.1 of the Standards.

11.12 CMI and Tillman shall make any other modifications described in the Modification List.

11.13 CMI and Tillman shall: 1) post conspicuous signage at each dispenser counter, notifying customers of staff assistance; and 2) post conspicuous signage in employee areas notifying employees of the obligation to provide such assistance.

12. With respect to the restaurant located at 5263 Poplar Ave., Memphis, TN, if CMI and Tillman replace the current facility with a new restaurant on that site, that new facility will comply fully with the Standards. Alternatively, if CMI and Tillman do not build a new facility but continue owning and operating the current facility, the parties will use their best efforts to develop a barrier removal plan consistent with the spirit of the barrier removal being undertaken at other locations pursuant to this Decree.

13. With respect to the restaurant located at 3068 S. Perkins Rd., Memphis, TN, if CMI and Tillman replace the current facility with a new restaurant on that site, that new facility will comply fully with the Standards. Alternatively, if CMI and Tillman do not build a new facility but continue owning and operating the current facility, the parties will use their best efforts to develop a barrier removal plan consistent with the spirit of the barrier removal being undertaken at other locations pursuant to this Decree.

14. CMI and Tillman shall, at all times after the entry of this Order, maintain the accessible features in existence as of the date of the entry of this Order and those modifications required by this Decree in good and usable condition in compliance with 28 C.F.R. § 36.211 as

long as the restaurants continue to be places of public accommodations and CMI and Tillman continue to own, lease, operate or manage such restaurants.

15.    While this Decree is in effect, CMI and Tillman shall, every six months, produce for counsel for the Plaintiff a written report of work performed by CMI and Tillman in furtherance of the requirements of this Decree.

16.    Upon three (3) business days' notice, CMI and Tillman shall allow for inspection by the Department of Justice to audit compliance with this Decree.

17.    Without admitting any liability whatsoever, CMI and Tillman shall, within thirty (30) days of the execution of a general release of CMI, Tillman and McDonald's Corporation from Ms. Ada Anderson, pay her the amount of $40,000.00 in accordance with 42 U.S.C. § 12188(b)(2)(B). This payment shall be made by check payable to Ada Anderson and hand delivered or mailed to Ms. Anderson care of Gary A. Vanasek, Assistant United States Attorney, at 167 North Main, Suite 800, Memphis, TN 38103; and shall be deemed to be a full and complete settlement of all claims of Ms. Anderson against any and all of CMI, Tillman and McDonald's Corporation arising from or related to the facts alleged herein.

18.    CMI and Tillman shall, within thirty (30) days of the entry of this Decree, pay to the United States of America $55,000.00 pursuant to 42 U.S.C. § 12188(b)(2)(C). Said payment shall be made by electronic funds transfer pursuant to instructions provided by the U. S. Attorney.

19.    In the event that CMI or Tillman are delayed in meeting any deadline for making architectural modifications pursuant to this Decree due to any acts of God, force majeure, strike, slow down, lock out, failure or refusal of any local code authority to issue a construction or occupancy permit, unavailability of goods or services on commercially reasonable terms, or any other condition beyond their control, the time for meeting such deadline or complying with such

7

obligation shall be extended for a reasonable time until after the conditions end or substitute arrangements can be made, as long as CMI and Tillman provide written notice to the United States within 10 business days of their notice of the specified condition. Upon such notice, the parties will negotiate in good faith to reach an agreement as to the extension that will be granted.

20.     The Plaintiff agrees to dismiss this action against Defendant McDonald's Corporation, in consideration for the actions McDonald's Corporation has agreed to undertake in the attached settlement agreement (Attachment D).

21.     The Plaintiff may enforce this Decree if the Plaintiff determines that it or any requirement has been violated. If the Plaintiff determines that this Decree or any portion of it has been violated, it will raise its concern(s) with CMI and Tillman, and the parties will attempt to resolve the concern(s) in good faith. The Plaintiff will give CMI and Tillman 21 days from the date it notified them of any alleged breach of this Decree to cure that breach, prior to instituting any court action.

22.     Failure by the Plaintiff to seek enforcement of this Decree with regard to any deadline or provision shall not be construed as a waiver of its right to do so with regard to the other deadlines or provisions of the Decree. If any term of this Decree is found to be unenforceable, the other terms of the Decree shall nonetheless remain in full force and effect. Should new disputes arise between the parties involving other than the fulfillment of the terms of this Decree, those disputes are independent matters which must be presented to the appropriate administrative or judicial forum.

23.     This Consent Decree is limited to the Restaurants set forth in it. It does not purport to remedy any other potential violations of the ADA or any other Federal law at any other location.

24.    The Plaintiff does not assert that this Consent Decree and the modifications required by it necessarily bring the restaurants covered by the Consent Decree into compliance with all aspects of the ADA, and nothing in this Decree is intended to constitute an interpretation of the legal requirements of the ADA by the United States. Likewise, the entry of this Consent Decree shall not constitute admission of liability or fault on the part of CMI, Tillman or McDonald's Corporation. Rather, this Consent Decree is entered into by the parties for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation. This Consent Decree is a compromise of claims and it shall not be used or introduced into evidence against CMI, Tillman or McDonald's Corporation in any other case or proceeding other than between the parties to this Consent Decree or the parties in the related Agreement in Attachment D.

25.    This Consent Decree is final and binding on CMI and Tillman, including their principals, agents, employees, and successors in interest, transferees and assigns. In the event that CMI and Tillman seek to transfer or assign all or part of their interest in any facility covered by this Decree, and the successor, transferee or assign intends on carrying on the same or similar use of the facility, as a condition of transfer or assignment, CMI and Tillman shall obtain the written accession of the successor, transferee or assign to any obligations remaining under this Decree for the remaining term.

26.    In consideration for the actions CMI and Tillman have agreed to take in this Decree, the Plaintiff agrees not to be a party to any lawsuit filed against CMI, Tillman or McDonald's Corporation, or their successors, transferees and assigns, regarding removal of barriers to access affecting the subject 28 restaurants so long as all modifications required herein are made timely and properly.

27.     This Decree, and all information contained in it, are public. The parties will provide a copy of this Decree to any person upon request. This Decree may be posted on the U.S. Department of Justice's website.

28.     The parties agree that where reduced-sized blueprint, drawings or plans are attached hereto, they are merely representative of full-sized blueprints, drawings or plans, copies of which are to be maintained by each party. In the event of a discrepancy between a full-sized blueprint, drawing or plan and a reduced-sized version, the full-sized version is to be considered authoritative.

29.     This Decree shall remain in effect for three years from its effective date, which is the date it is entered by the Court, plus any extensions negotiated pursuant to Paragraphs 19 and 21. This action shall be, and hereby is, dismissed with prejudice, except that the United States may petition the Court, at any time during the duration of this Decree, to reopen this case against Tillman and CMI for the purpose of enforcing the Decree, and the Court shall retain jurisdiction of this action to enforce this Decree. Further, should litigation be necessary to enforce the terms of this Decree, all parties to this Decree agree to the jurisdiction and venue of the U.S. District Court for the Western District of Tennessee.

30.     This Decree and any attachments constitute the entire agreement between the parties relating to Civ. 03-2061, W.D. Tenn. No. (DJ 202-72-23), and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Decree, shall be enforceable.

31.     Deadlines listed in this Decree which fall on weekends or holidays will be extended to the next business day.

32.     Each party will bear its own costs and attorney's fees.

_BERNICE B. DONALD_
United States District Judge

DATED: _December 14, 2005_

APAPPROVED:

FOR THE UNITED STATES OF AMERICA:

ALBERTO R. GONZALES
Attorney General

BRADLEY J. SCHOLZMAN                      LAWRENCE J. LAURENZI
Acting Asst. Attorney General              Acting United States Attorney

Civil Rights Division

John L. Wodatch, Chief              By: _Gary A Vanasek_
Kate Nicholson, Trial Attorney         Gary A. Vanasek (994675)
Disability Rights Section              Harriet Miller Halmon (995320)
Civil Rights Division                  Assistant U.S. Attorneys
United States Department of Justice    167 North Main, Suite 800
950 Pennsylvania Ave., NW              Memphis, TN 38103
Washington, D.C. 20530                 (901) 544-4231

FOR DEFENDANTS CENTURY MANAGEMENT, LLC and FRED TILLMAN

Thomas L. Henderson
Lewis Fisher Henderson Claxton & Mulroy, LLP
6410 Poplar Ave., Suite 300
Memphis, TN 38119

# 3067160_v9

11

## Attachment A:  Restaurant List

4210 Summer Ave., Memphis
  Plaintiff's # 2
  CMI # 5284

2850 Lamar Ave., Memphis
  Plaintiff's #4
  CMI # 1401

2062 Frayser Blvd., Memphis
  Plaintiff's #5
  CMI #6467

1389 Poplar Ave, Memphis
  Plaintiff's #6
  CMI # 7324

995 E. Parkway S., Memphis
  Plaintiff's #7
  CMI # 5041

5263 Poplar Ave., Memphis
  Plaintiff's #8
  CMI # 1083

1352 E. Shelby Dr., Memphis
  Plaintiff's #10
  CMI #2357

3224 Jackson Ave;, Memphis
  Plaintiff's #11
  CMI #7071

3377 Winchester Rd., Memphis
  Plaintiff's #12
  CMI # 7514

1918 Hwy 45, Jackson
  Plaintiff's #13
  CMI # 8022

1705 S. Highland, Jackson
  Plaintiff's #14
  CMI # 5715

2994 Poplar Ave., Memphis
  Plaintiff's #15
  CMI # 6092

2200 Covington Pike, Memphis
  Plaintiff's #16
  CMI # 7509

3068 S. Perkins, Memphis
  Plaintiff's #17
  CMI #789

1666 Winchester, Memphis
  Plaintiff's #18
  CMI # 3330

3194 N. Thomas, Memphis
  Plaintiff's #19
  CMI #5724

1915 N. Highland, Jackson
  Plaintiff's #20
  CMI #1219

657 S. Highland, Memphis
  Plaintiff's #21
  CMI #790

6050 Winchester, Memphis
  Plaintiff's #22
  CMI # 6590

4735 Navy Road, Millington
  Plaintiff's #25
  CMI # 3321

3363 Austin Peay, Memphis
  Plaintiff's #26
  CMI # 2174

6048 Stage Road, Bartlett
  Plaintiff's #27
  CMI # 6091

2030 Germantown Road,
Germantown
  Plaintiff's #31
  CMI # 5154

674 N. Germantown Pkwy,
Cordova
  Plaintiff's #35
  CMI # 10676

7011 E. Shelby Dr., Memphis
  Plaintiff's #41
  CMI # 11131

1325 Ridgeway, Memphis
  Plaintiff's #45
  CMI # 10225

1755 Getwell, Memphis
  Plaintiff's #48
  CMI # 10255

3636 S. Mendenhall, Memphis
  Plaintiff's #51
  CMI # 10894

Attachment A
Restaurant List

## Attachment B
## Modification List

All citations below refer to the ADA Standards for Accessible Design, 28 C.F.R. pt. 26, App. A (the "Standards").

# 675 S. Highland, Memphis, Tennessee/Store #790/Plaintiff's #21

A curb ramp complying with the requirements of 4.7 of the Standards will be installed.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

In the women's restroom the hand dryer will be moved from its current location to the wall opposite the lavatory consistent with the requirements of 4.19.2 of the Standards and to insure sufficient clear floor space as required by 4.19.3 of the Standards.

The planter on the wall near the entry door to the men's restroom shall be removed to allow the entry door to open to 90 degrees as required by 4.13.5 of the Standards.

# 1915 N. Highland Avenue, Jackson, Tennessee/Store #1219/Plaintiff's #20

A ramp complying with 4.7 of the Standards will be installed.

A new van accessible parking space with a 96 inch wide access aisle complying with 4.1.2(5)(b) shall be installed at the front right of the restaurant as viewed from the street. In addition section of sidewalk from this parking area leading to the entrance shall be removed so that the elevation of the walking surface from the van accessible parking space to the other side of the playland emergency exit is on the same level. Finally, a ramp complying with 4.7 of the Standards shall be constructed leading from the surface reference above to the sidewalk leading to the entrance.

# 2850 Lamar, Memphis, Tennessee/Store # 1401/Plaintiff's #4

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the

Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.
18 inches of clear space on the strike side/pull side of the men's restroom door, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of a wall interfering with the clear space.

The urinal in the men's restroom will be lowered in compliance with 4.18.3 of the Standards.

## 3363 Austin Peay, Memphis, Tennessee/Store # 2174/Plaintiff's #26

The threshold at the otherwise accessible entrance to the restaurant shall be beveled to comply with 4.5.2.

Wheelstops shall be installed in the parking spaces adjacent to the sidewalk leading to the entrance of the restaurant and serving as part of the accessible route to insure that parked vehicles do not encroach into the required 36 inch wide accessible route along the sidewalk.

A new unisex accessible restroom shall be constructed in accordance with 4.16 and 4.19 of the Standards. The configuration of the new restroom is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.16 or 4.19 of the Standards, the new restroom shall be constructed in full compliance with 4.16 and 4.19 of the Standards. In constructing this new restroom allowance for a minimum maneuvering clearance of 54" for a latch side approach at the entry shall be made as required by 4.13.6 of the Standards and Fig. 25(c)  Permanent signage complying with 4.1.2(7), including the International Symbol of Accessibility, shall be mounted at the new restroom, and a directional sign for this new restroom, complying with 4.1.2(7) of the Standards, shall be mounted on the wall

Tables, seating, planters, room dividers shall be adjusted as necessary to insure an accessible path throughout the dining room as required by 5.4 of the Standards. In addition one existing table with designated accessible seating will be relocated to avoid blocking the aisle adjacent to the table when being used by a individual using a wheelchair.

## 1352 Shelby Drive, Memphis, Tennessee/Store # 2357/Plaintiff's #10

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The lavatory in the men's restroom will be remounted, in compliance with 4.19 of the Standards,

2

so as to provide a 30 in. x 48 in. clear space, outside of the door swing, as required by 4.19.3 of the Standards.

The urinal in the men's restroom will be lowered in compliance with 4.18.3 of the Standards.

## 4735 Navy Road, Millington, Tennessee/Store # 3321/Plaintiff's #25

The box culvert in the sidewalk serving as part of the accessible route shall be reworked to eliminate abrupt level changes and to provide a firm and stable surface in compliance with 4.5.1 and 4.5.2.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards. The entry door to the men's restroom will be re-hung so that it swings out rather than into the clear floor space for the lavatory.

The urinal in the men's restroom will be lowered in compliance with 4.18.3 of the Standards.

One dining table, complying with 4.32 of the Standards shall be added to the dining area.

## 1666 Winchester, Memphis, Tennessee/Store # 3330/Plaintiff's #18

Wheelstops shall be installed in the parking spaces adjacent to the sidewalk leading to the entrance of the restaurant and serving as part of the accessible route, to insure that parked vehicles do not encroach into the required 36 inch wide accessible route along the sidewalk.

An abrupt level change of greater than 1/4[th] inch along the accessible route will be ground and filled to reduce the level change to less than 1/4[th] inch.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

In the men's restroom the wing wall partition to the left of the lavatory will be cut back to provide additional turning space within the restroom.

18 inches of clear space on the strike side/pull side of the men's and women's restroom door, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of a wall interfering with the clear space.

3

The urinal in the men's restroom will be lowered in compliance with 4.18.3 of the Standards.

New faucet handles, complying with 4.19.5 of the Standards, shall be install on the lavatory in the men's restroom.

## 995 E. Parkway, Memphis, Tennessee/Store #5041/Plaintiff's #7

The threshold at the otherwise accessible entrance to the restaurant shall be beveled to comply with 4.5.2.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

At the lavatory in the men's and women's restroom remove or modify the existing side panel so as to allow for turning space toe clearance outside of the stalls.

The hand dryer in the men's restroom will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

In the men's restroom the urinal will either be removed or lowered in compliance with 4.18.2.

## 2030 Germantown Road, Germantown, Tennessee/Store # 5154/Plaintiff's #31

A new unisex accessible restroom shall be constructed in accordance with 4.16 and 4.19 of the Standards. The configuration of the new restroom is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.16 or 4.19 of the Standards, the new restroom shall be constructed in full compliance with 4.16 and 4.19 of the Standards. Permanent signage complying with 4.1.2(7), including the International Symbol of Accessibility, shall be mounted at the new restroom, and a directional sign for this new restroom, complying with 4.1.2(7), shall be mounted on the wall to the left of the vestibule entry leading to the restrooms which are not accessible.

The hand dryers in the men's and women's restrooms will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

4

## 4210 Summer Avenue, Memphis, Tennessee/Store # 5284/Plaintiff's #2

A curb ramp complying with 4.7 of the Standards will be constructed near the southeast corner of the restaurant building. Two new parking spaces and an access aisle, complying with 4.1.2(5) & 4.6 of the Standards will be striped in parking area immediately across from the new ramp. At the access aisle a 36 inch section of the existing curb between the parking lot and the public sidewalk will be removed and paved so as to create a level, accessible route from the public sidewalk, through the parking access aisle, and up to the newly constructed ramp leading to the entrance of the restaurant. New door pull hardware, complying with 4.13.9 of the Standards, shall be installed.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The entrance doors to the men's and women's restrooms will be remounted to swing out rather than into the restroom space to provide sufficient pull-side maneuvering clearance.

## 1705 S. Highland Avenue, Jackson, Tennessee/Store # 5715/Plaintiff's #14

A new curb ramp, complying with 4.7 of the Standards, will be constructed at the intersection of the existing public sidewalk and the sidewalk leading to the restaurant building.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards. However, at this location Century will investigate the ability to reduce the size of the chase upon which the urinal is mounted to provide clear space for the urinal and clear floor space for the stall door. If the chase cannot be reduced in size, the stall partition will be installed to provide the largest amount of space within the stall so that the stall door in the men's restroom can swing in to avoid encroaching into the clear floor space for the urinal. To the extent such an installation results in a variation from the specifications in 4.17 or Fig. 30(a) or 30(a-1), it will be deemed to constitute readily achievable barrier removal.
18 inches of clear space on the strike side of the men's restroom door, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of a wall interfering with the clear space.

5

## 3194 North Thomas Street, Memphis, Tennessee/Store #5724/Plaintiff's #19

A threshold at the otherwise accessible entrance to the restaurant shall be beveled to comply with 4.5.2.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

## 6048 Stage Road, Memphis, Tennessee/Store #6091/Plaintiff's #27

The existing curb ramp at will be removed and replaced by a new curb ramp, complying with 4.7 of the Standards. In addition the sidewalk at the top of the new ramp will be replaced with a new sidewalk the cross-slope of which will not exceed 2% and which will otherwise comply with 4.3 & 4.5. The threshold at the otherwise accessible entrance to the restaurant will be beveled to comply with 4.5.2.

A sign indicating the direction of the accessible route to the curb ramp will be mounted near the entrance to the parking lot.

Wheelstops will be installed in the parking spaces along the sidewalk serving as the accessible route to prevent interference with the width of the accessible route.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The hand dryers in the men's and women's restrooms will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 2994 Poplar Avenue, Memphis, Tennessee/Store #6092/Plaintiff's #15

A new built up curb ramp, complying with 4.7 of the Standards shall be installed at the end of the existing sidewalk running perpendicular to the front of the restaurant. The ramp shall be

installed adjacent to the last parking space on the right side in a manner that will not interfere with the vehicular route.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards. Also, the flush valve force will be fixed to be no more than 5 lbf.

18 inches of clear space on the strike side of the men's restroom door, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of a wall interfering with the clear space.

## 2062 Frayser Blvd., Memphis, Tennessee/Store # 6467/Plaintiff's #5

Directional signage, complying with 4.1.2(16)(b)of the Standards, shall be installed in the front traffic island on the left side of the parking area to indicate the accessible route to the accessible entrance of the restaurant building.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

In the men's and women's restrooms the lavatory overflows will be adjusted or replaced to fit flush against the underside of the lavatory to provide more knee clearance.

## 6050 Winchester Road, Memphis, Tennessee/Store # 6590/Plaintiff's #22

A curb ramp complying with 4.7 of the Standards will be installed.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

18 inches of clear space on the strike side of the men's restroom door, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of a wall interfering with the

7

clear space.

A door stop at the entry to the women's restroom shall be removed to allow the restroom entry door to open to 90 degrees as required by 4.13.5 of the Standards.

The hand dryer in the men's restroom will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 3224 Jackson Avenue, Memphis, Tennessee/Store #7071/Plaintiff's #11

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The hand dryers in the men's and women's restrooms will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

The pay telephone in the dining room near the entrance to the restrooms shall be removed.

## 1389 Poplar Avenue, Memphis, Tennessee/Store #7324/Plaintiff's #6

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards, provided, however, that the stall door in the men's restroom shall be mounted to swing into the stall to insure sufficient clear floor space outside of the stall.

The entry door to the women's restroom shall be rehung so as to swing into the restroom space.

The planter in the dining room shall be relocated or removed to insure an accessible route throughout the dining area as required by 4.3.3 and 5.3 of the Standards.

## 2200 Covington Pike, Memphis, Tennessee/Store  # 7509/ Plaintiff's #16

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The

specific stall reconfiguration is shown in the plan in Attachment C.  In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

## 3377 Winchester Road, Memphis, Tennessee/Store #7514/Plaintiff's #12

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards.  The specific stall reconfiguration is shown in the plan in Attachment C.  In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The hand dryer in the men's restroom will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 1918 Hwy 45, Jackson, Tennessee/Store # 8022/Plaintiff's #13

A new curb ramp, complying with 4.7 of the Standards will be installed. In addition the sidewalk at the top of the new ramp will be replaced with a new sidewalk, the cross-slope of which will not exceed 2% and which will otherwise comply with 4.3 & 4.5 of the Standards.

A new unisex accessible restroom shall be constructed in accordance with 4.16 and 4.19 of the Standards.  The configuration of the new restroom is shown in the plan in Attachment C.  In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.16 or 4.19 of the Standards, the new restroom shall be constructed in full compliance with 4.16 and 4.19 of the Standards.  Permanent signage complying with 4.1.2(7), including the International Symbol of Accessibility, shall be mounted at the new restroom, and a directional sign for this new restroom, complying with 4.1.2(7) of the Standards, shall be mounted on the wall to the left of vestibule entry leading to the restrooms which are not accessible.  The new entry to this restroom shall comply with 4.13 of the Standards.

The hand dryer in the men's restroom will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 1325 Ridgeway, Memphis, Tennessee/ Store # 10225/Plaintiff's #45

Concrete at the junction between the existing curb ramp and the brick sidewalk will be removed so as to insure a 36 inch wide route from the top of the ramp to the adjoining sidewalk.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The hand dryers in the men's and women's restrooms will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 1755 Getwell, Memphis, Tennessee/Store #10255/Plaintiff's #48

The threshold at the otherwise accessible entrance to the restaurant shall be beveled to comply with 4.5.2 of the Standards.

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards.

The urinal in the men's restroom will be lowered in compliance with 4.18.3 of the Standards.

## 674 Germantown Parkway, Cordova, Tennessee/Store # 10676/ Plaintiff's #35

The sign indicating the accessible entrance shall be relocated to the adjacent door.

A new unisex accessible restroom shall be constructed in accordance with 4.16 and 4.19 of the Standards. The configuration of the new restroom is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.16 or 4.19 of the Standards, the new restroom shall be constructed in full compliance with 4.16 and 4.19 of the Standards. Permanent signage complying with 4.1.2(7), including the International Symbol of Accessibility, shall be mounted at the new restroom, and a directional sign for this new restroom, complying with 4.1.2(7) of the Standards, shall be mounted on the wall to the left of vestibule entry leading to the restrooms which are not accessible. The entry to this new restroom shall comply with 4.13 of the Standards.

One dining table, complying with 4.32 of the Standards shall be added to the play area.

## 3636 S. Mendenhall, Memphis, Tennessee/Store # 10894/ Plaintiff's #51

The men's and women's restrooms will be reconfigured to provide one accessible standard stall in each, complying with the requirements of 4.17 and Fig. 30 (a) or (a-1) of the Standards. The specific stall reconfiguration is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.17 of the Standards, the reconfiguration shall be accomplished in full compliance with 4.17 and Fig. 30 (a) or (a-1) of the Standards. However, at this location Century will investigate the ability to reduce the size of the chase upon which the urinal is mounted to provide clear space for the urinal and clear floor space for the stall door. If the chase cannot be reduced in size, the stall partition will be installed to provide the largest amount of space within the stall so that the stall door in the men's restroom can swing in to avoid encroaching into the clear floor space for the urinal. To the extent such an installation results in a variation from the specifications in 4.17 or Fig. 30(a) or 30(a-1), it will be deemed to constitute readily achievable barrier removal.

18 inches of clear space on the strike side of the men's and women's restroom doors, as required by 4.13.6 of the Standards and Fig. 25(a), shall be accomplished by the removal of the walls interfering with the clear space. At this location Century will investigate ability to reduce size of the chase upon which the urinal is mounted to provide clear space for the urinal and clear floor space for the stall door. If the chase cannot be reduced in size, the stall partition will be installed to provide the largest amount of space within the stall so that the stall door in the men's restroom can swing in to avoid encroaching into the clear floor space for the urinal.

The hand dryers in the men's and women's restrooms will be replaced with a hand dryer which does not protrude into a circulation path more than 4 inches and shall be mounted within the reach ranges required by 2.2.5 and 4.2.6 of the Standards as appropriate.

## 7011 E. Shelby Drive, Memphis, Tennessee/Store # 11131/Plaintiff's #41

The existing curb ramp at will be removed and replaced by a new curb ramp, complying with 4.7 of the Standards.

A new unisex accessible restroom shall be constructed in accordance with 4.16 and 4.19 of the Standards. The configuration of the new restroom is shown in the plan in Attachment C. In the event the plan lacks specific detail or if any feature of the plan is inconsistent with the requirements of 4.16 or 4.19 of the Standards, the new restroom shall be constructed in full compliance with 4.16 and 4.19 of the Standards. Permanent signage complying with 4.1.2(7), including the International Symbol of Accessibility, shall be mounted at the new restroom, and a directional sign for this new restroom, complying with 4.1.2(7) of the Standards, shall be mounted on the wall to the left of vestibule entry leading to the restrooms which are not accessible. The new entry to this restroom shall comply with 4.13 of the Standards.

11

The smoking urn in the dining room shall be relocated or removed to insure an accessible path of travel throughout the dining area as required by 4.3.3 and 5.3 of the Standards.

One dining table, complying with 4.32 of the Standards shall be added to the dining area.

## Attachment C

## Architectural Drawings

The attached plans were originally drawn on a scale of ½ inch = 1 foot and the dimensions on the plans use this scale.  However, for purposes of including these plans as an attachment to the Consent Order, they have been reduced in size by one half.



2  NEW RESTROOM PLAN
1/2" = 1'-0"

ACCESSIBILITY NOTES



GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, SUITE 402
MEMPHIS, TENNESSEE 38119
(901) 682-3003

McDonald's STORE #790
651 S. HIGHLAND
MEMPHIS, TENNESSEE 38111





McDonald's STORE #2114
3363 AUSTIN PEAY HIGHWAY
MEMPHIS, TENNESSEE 38128

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003





GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE #2357
1352 SHELBY DRIVE
MEMPHIS, TENNESSEE 38111

② NEW RESTROOM PLAN
1/2" = 1'-0"

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE #3330
1666 WINCHESTER
MEMPHIS, TENNESSEE 38116



McDonald's STORE 9041
985 EAST PARKWAY SOUTH
MEMPHIS, TENNESSEE 38104

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003



McDonald's STORE 5154
2030 GERMANTOWN RD.
GERMANTOWN, TENNESSEE 38138

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003



McDonald's STORE 5284
4210 SUMMER AVE.
MEMPHIS, TENN. 38122

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017
(901) 853-3800



2 NEW RESTROOM PLAN

ACCESSIBILITY NOTES

GENERAL NOTES

5'-0"

18"

18"

5'-0"

2'-1"

2'-8"

2'-4"

42" MIN.

3'-6" MIN.

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017
(901) 853-3800

McDonald's STORE • 3715
1708 SOUTH HIGHLAND
JACKSON, TENN. 38301



GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, SUITE 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE # 3724
3149 N. THOMAS STREET
MEMPHIS, TENN. 38127





## 2 NEW RESTROOM PLAN
1/2" = 1'-0"

### ACCESSIBILITY NOTES

### GENERAL NOTES

### GRAB BARS

McDonald's STORE #6092
2994 POPLAR AVE.
MEMPHIS, TENNESSEE 38111

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017

(901) 853-3800





GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017
(901) 853-3800

McDonald's STORE #5320
6050 WINCHESTER ROAD
MEMPHIS, TENNESSEE 38111



② NEW RESTROOM PLAN
1/2" = 1'-0"

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

5575 POPLAR AVENUE, SUITE 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE • 7671
3224 JACKSON AVENUE
MEMPHIS, TN 38122



McDonald's STORE #7324
1389 POPLAR AVE.
MEMPHIS, TENNESSEE 38104

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017
(901) 853-3800







GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

695 W. POPLAR, SUITE 1

COLLIERVILLE, TENNESSEE 38017

(901) 853-3800

McDonald's STORE #1514
3377 WINCHESTER ROAD
MEMPHIS, TENNESSEE 38118

2 NEW RESTROOM PLAN
1/2" = 1'-0"

ACCESSIBILITY NOTES

3'-0"

12" MIN.

NEW UNISEX
H.C. TOILET

7'-6"

3'-6"

INSTALL NEW LAV.

INSTALL NEW WATER CLOSET

INSTALL NEW GRAB BARS

INSTALL NEW DOOR

PATCH ADJACENT F.F.

INSTALL NEW WALL

REMOVE EXIST. WALLS
REPAIR FLOOR AS REQ.

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE #8022
HIGHWAY 45 BYPASS
JACKSON, TENNESSEE



SEE DRAWING FOR 3377 WINCHESTER

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.
5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE #0225
1325 RIDGEWAY
MEMPHIS, TENNESSEE 38119



GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

695 W. POPLAR, SUITE 1
COLLIERVILLE, TENNESSEE 38017
(901) 853-3800

McDonald's STORE # 10255
1753 GETWELL
MEMPHIS, TN 38111



② NEW RESTROOM PLAN
1/8" = 1'-0"

KITCHEN

DINING ROOM

H.C. TOILET
NEW UNISEX

EXIST TOILET

10'-10"
7'-9"
3'-0"
12"
3'-6"
8"
5'-11"
48" MIN
12" MIN
8" MIN
4'-3"
4'-0"
3'-0"
6'-3"
15'-2"

INSTALL NEW WALLS
PATCH ADJ. FINISHES

INSTALL NEW DOOR
& FRAME

INSTALL NEW WALL
PATCH ADJ. FINISHES

INSTALL UNISEX
H.C. TOILET

INSTALL DIRECTIONAL
SIGN

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

5575 POPLAR AVENUE, STE. 402
MEMPHIS, TENNESSEE 38119

(901) 683-3003

McDonald's STORE #0676
674 N. GERMANTOWN PKWY.
CORDOVA, TENNESSEE 38018



GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

5575 POPLAR AVENUE, SUITE 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE # 10884
3636 S. MEDENHALL
MEMPHIS, TENN. 38115



NEW RESTROOM PLAN
2
1/8" = 1'-0"

EXIST. KITCHEN

EXIST. MEN'S TOILET

EXIST. WOMEN'S TOILET

EXIST. JAN. CLO.

EXIST. DINING

NEW UNISEX H.C. TOILET

48" MIN

INSTALL NEW GRAB BARS

INSTALL NEW GRAB BARS

INSTALL NEW H.C. DOOR & FRAME

INSTALL DIRECTIONAL SIGN

INSTALL UNISEX H.C. SIGN

12"   3'-6"

3'-0"

8'-1"

6'-3"

4'-9"

18"

18"

4'-0"

ACCESSIBILITY NOTES

GRAB BARS

GUY PAYNE & ASSOCIATES ARCHITECTS, P.C.

5875 POPLAR AVENUE, SUITE 402
MEMPHIS, TENNESSEE 38119
(901) 683-3003

McDonald's STORE • 11131
7011 E. SHELBY DRIVE
MEMPHIS, TENN. 38125

**ATTACHMENT D**

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES
OF AMERICA, McDONALD'S CORPORATION, FRED TILLMAN
AND CENTURY MANAGEMENT, INC.**

### SETTLEMENT AGREEMENT BETWEEN
### THE UNITED STATES OF AMERICA AND McDONALD'S CORPORATION
### AND INDEMNITY AGREEMENT BETWEEN
### McDONALD'S CORPORATION AND FRED TILLMAN
### <u>AND CENTURY MANAGEMENT, LLC</u>

**A.      Background and Parties**

1.      The parties to this Settlement Agreement ("Agreement") are the United States of America, McDonald's Corporation ("McDonald's"), Fred Tillman ("Tillman") and Century Management, LLC ("Century Management").

2.      McDonald's is incorporated under the laws of Delaware and has its headquarters in Oak Brook, Illinois.  It franchises certain McDonald's brand restaurants to "owner-operators" and operates certain other McDonald's brand restaurants itself.

3.      Tillman is a franchisee (owner-operator) of certain McDonald's brand restaurants and is a resident of Tennessee.

4.      Century Management is a limited liability company under the laws of Tennessee and has its headquarters in Memphis, Tennessee.   It is a management company for the McDonald's brand restaurants of which Tillman is the owner-operator.

5.      This matter was commenced when Ada Anderson, a resident of Tennessee, filed a complaint with the Disability Rights Section of the Civil Rights Division of the United States Department of Justice (the "Department") claiming that the McDonald's brand restaurant at 4237 Elvis Presley Blvd., Memphis, Tennessee had violated Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189.   The complaint stated Ms. Anderson is an individual with a mobility impairment, that the toilet stall in the women's

bathroom was not accessible and that as a result she fell and injured herself on March 26, 2000. That restaurant has since been closed. The restaurant in question was a franchised restaurant. The owner-operator of that restaurant was Tillman, and Century Management managed that restaurant.

6.      The Department investigated the McDonald's brand restaurants of which Tillman is the owner-operator and Century Management is the management company and concluded that there were certain ADA violations at those restaurants. Century Management, with whom the Department was dealing at the time, denied that the restaurants violated the ADA.

7.      The Department and Century Management attempted to resolve their dispute without litigation without success.

8.      The United States filed an action against Century Management in the United States District Court for Western District of Tennessee. The United States alleged that Century Management violated Title III of the ADA at 28 McDonald's brand restaurants. The United States subsequently filed an Amended Complaint adding Tillman as a defendant and a Second Amended Complaint adding McDonald's as a defendant. That action is pending as Case No. 03-2061 B (the "Lawsuit"). Century Management, Tillman and McDonald's denied and continue to deny that they violated the ADA.

**B.      The Consent Decree Against Tillman and Century Management**

9.      Tillman and Century Management, without admitting any liability, agreed to entry of a consent decree (the "Consent Decree") in the Lawsuit, pursuant to which they will (a) pay a certain amount pursuant to 42 U.S.C. §12188(b)(2) to the United States, (b) pay a certain sum to Ms. Anderson, and (c) make certain architectural modifications (the "Modifications") to the

McDonald's brand restaurants operated by Tillman, as set forth in the Consent Decree, in order to provide further access to individuals with disabilities. A copy of the Consent Decree is attached hereto as Exhibit 1. McDonald's is not a party to the Consent Decree.

## C.    Agreement Between United States and McDonald's

10.    In order to avoid protracted litigation, and without admitting any wrongdoing, fault, violation, or liability under the ADA or otherwise, the United States and McDonald's agree as follows.

11.    In the event of any alleged material breach, material delay or material default by Tillman and Century Management in making the Modifications to the restaurants as specified in the Consent Decree, the Department shall provide written notice to Tillman and Century Management, with a copy to McDonald's, specifying the Modifications in question and the particulars of the alleged breach, delay or default, and giving Tillman and Century Management 21 days from the date of notice to cure their alleged default or to reach agreement with the Department to cure their alleged default.

12.    If an alleged breach, delay or default referred to in Paragraph 11 is cured within the cure period or Tillman and Century Management reach agreement with the Department within the cure period to cure their alleged default, the Department shall send prompt notice to Tillman and Century Management, with a copy to McDonald's, so stating.

13.    If an alleged breach, delay or default referred to in Paragraph 11 is not cured within the cure period and Tillman and Century Management do not reach agreement with the Department within the cure period to cure their alleged default, the Department shall send notice to McDonald's, with copies to Tillman and Century Management, specifying the Modifications

that remain uncured and the particulars of any uncured alleged breach, delay or default and demanding that McDonald's make or cause to be made the uncured Modifications in question. McDonald's shall then, at its option:  (a) complete the uncured Modifications in question in accordance with the terms and conditions of the Consent Decree, or (b) obtain a bid or bids for completing the uncured Modifications in question in accordance with the terms and conditions of the Consent Decree, and upon selection of a responsible bidder, arrange for a contract between such bidder and Tillman or Century Management, or both, as McDonald's deems appropriate, and make available as work progresses sufficient funds to pay the cost of completion of the uncured Modifications in question in accordance with the terms and conditions of the Consent Decree.  Provided however, the time for completion of any such Modification by McDonald's or a contractor selected by McDonald's shall be extended by a reasonable time to allow for the obtaining of bids, the arranging of a contract with a bidder, and the work schedule of such contractor and transition time involved in changing contractors on the job.   McDonald's responsibility shall be limited to the specific uncured Modifications at the particular restaurant or restaurants specified in the notice, and a breach, delay or default as to one Modification at one restaurant shall not cause McDonald's to be responsible for Modifications at other restaurants or as to other Modifications at the same restaurant.  McDonald's also shall have no liability or responsibility for the amount paid pursuant to 42 U.S.C. §12188(b)(2)(C) or the payment to Ms. Anderson referred to in the Consent Decree.

14.    No right of action shall accrue on this Agreement to or for the use of any person or entity other than the Department.  Without limiting the generality of the foregoing, no contactor, subcontractor of any tier, architect, engineer, construction manager or other supplier of materials, goods, equipment, labor or services or other person or entity in connection with any

4

Modification pursuant to the Consent Decree or this Agreement shall be a third party beneficiary of this Agreement.  Nor shall Tillman or Century Management be a party to or a third party beneficiary of Paragraphs 10-20 of this Agreement.

15.     Nothing in this Agreement or done pursuant hereto will make McDonald's a party to or subject to the Consent Decree, the obligations of McDonald's hereunder being contractual only.

16.     Any deadline hereunder shall be extended for a reasonable time because of any acts of God, war, acts of terrorism, civil insurrection, strikes, work stoppages, slow downs, lock outs or other labor actions, unavailability or delay in delivery of materials or equipment, unavailability of qualified workers, contractors, subcontractors, architects, engineers or other persons or entities, failure, refusal, or delay by any code enforcement or other regulatory agency to issue permits or occupancy certificates or to take any other actions, the inability to obtain goods or services on commercially reasonable terms, or other similar force majeure condition or any other cause beyond the control of McDonald's, and McDonald's shall not be in breach or default under this Agreement during the period of existence of any such cause and for a reasonable time thereafter, as long as Century Management, Tillman or McDonald's provide written notice to the Department within ten (10) business days of their notice of the specified condition.

17.     Any demand on McDonald's by the Department must be made, as to a particular restaurant, within a reasonable time after the Department becomes aware of any uncured breach, delay or default at that restaurant.  In any event, any demand by the Department on McDonald's must be made within 90 days after the Department is notified by Tillman and Century

5

Management that construction on the Modifications at that restaurant has been completed, but in no event later than nine months after construction on the Modifications at that restaurant has been completed, or within three years from the date of entry of the Consent Decree, whichever is earliest.

18.     McDonald's shall have the right, at its option, to procure payment, performance or other bonds from sureties to insure all or any part of its obligations under this Agreement, provided such surety has the bonding capacity to issue bonds of at least $1 million. In the event McDonald's procures a bond or bonds from sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such sureties, as their interests may appear, and McDonald's will be, to the extent of such bond, relieved of any obligation to that extent under this Agreement.

19.     No changes in the Consent Decree that add Modifications to the original list of Modifications, that shorten the time for, increase the cost of or make more difficult any Modifications, or that increase the actual or potential liability of McDonald's under this Agreement shall be binding on McDonald's under this Agreement or otherwise.   Without waiving the foregoing, McDonald's shall be promptly notified by the Department and by Tillman and Century Management of any changes to the Consent Decree.

20.     The above contingent obligation of McDonald's under this Agreement is void if Tillman and Century Management perform and fulfill all the terms and conditions of the Consent Decree as to Modifications during the original term of the Consent Decree and any extensions thereof that are made in compliance with the Consent Decree and this Agreement.

6

**D.    Non-Admission**

21.    McDonald's, Tillman and Century Management have denied and continue to deny any wrongdoing, fault, violation or liability under Title III of the ADA or otherwise and state that they have been committed and are committed to full compliance with the ADA and all applicable laws.  McDonald's further states that it has been committed to making its restaurants accessible to persons with disabilities, and has taken numerous steps to do so, for many years, starting even before the ADA existed.  Neither this Agreement, nor anything done or not done pursuant hereto, or the Consent Decree or anything done or not done pursuant thereto, constitutes an admission or any evidence of a violation of or liability under the ADA or any other federal, state or local disability law, all such allegations being expressly denied.

**E.    Indemnity Agreement Between Tillman and Century Management
On One Hand and McDonald's on the Other**

22.    In consideration of McDonald's promises to the United States in Paragraphs 10-20 of this Agreement, Tillman and Century Management shall indemnify and keep indemnified McDonald's from and against any and all liability, losses and expenses of whatever kind or nature (including but not limited to interest, court costs, attorneys' fees and expert fees) and from and against any and all such liability, losses and expenses which McDonald's may sustain and incur:  (a) by reason of the failure of Tillman or Century Management or both to perform or comply with the terms and conditions of the Consent Decree, (b) by reason of McDonald's performance in the future of its obligations under this Agreement, (c) by reason of the failure of Tillman or Century Management or both to perform or comply with the terms and conditions of this Agreement, or (d) in enforcing any of the terms and conditions of this Agreement against Tillman or Century Management or both.  Payment by reason of the aforesaid causes shall be

made to McDonald's by Tillman and Century Management as soon as liability exists or is asserted against McDonald's under this Agreement, whether or not McDonald's shall have made any payment for such liability or asserted liability. Such payment by Tillman and Century Management shall be equal to at least the amount of any reserve or any amended reserve set in good faith by McDonald's for such liability or asserted liability. In the event of any payment by McDonald's under this Agreement, Tillman and Century Management further agree that in any accounting between McDonald's and Tillman or Century Management, or both of them, McDonald's shall be entitled to charge Tillman or Century Management, or both, for any and all disbursements made by it in good faith in and about the matters contemplated in this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the cancelled checks or other evidence of such payments made by McDonald's shall be prima facie evidence of the fact and amount of the liability of Tillman and Century Management to McDonald's. Tillman and Century Management shall not be responsible to indemnify McDonald's for any premium paid to any surety for any bond pursuant to Paragraph 18 of this Agreement.

23.    McDonald's shall have the right in good faith to adjust, settle or compromise any claim, demand, suit or judgment arising out of or related to this Agreement. Tillman and Century Management may request McDonald's to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and any such request shall be accompanied by a deposit with McDonald's of cash or collateral satisfactory to McDonald's in kind and amount, to be used in paying any judgments rendered or that may be rendered, with interest, costs, expenses, attorney's fees and expert fees, including those of McDonald's. Notwithstanding any such

8

request, McDonald's, in its sole discretion, shall have the right in good faith to deny such request and to adjust, settle or compromise any such claim, demand, suit or judgment as McDonald's sees fit.

24.    Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether arising prior thereto, simultaneously, or thereafter.

25.    Nothing in this Agreement or done pursuant to this Agreement shall change the relationship of McDonald's and Tillman or modify any agreement between McDonald's and Tillman or any person or entity affiliated with Tillman or Century Management. Tillman and Century Management acknowledge that they are not parties to or third party beneficiaries of Paragraphs 10-20 of this Agreement.

## F.    Enforcement

26.    The United States may review compliance with this Agreement at any time and may seek to enforce this Agreement if the United States believes that it or any requirement thereof has been violated. If the United States believes that this Agreement or any portion of it has been violated, it will raise its concern(s) with McDonald's and the parties will attempt to resolve the concerns in good faith. The United States will give McDonald's 30 days from the date it notifies McDonald's of any breach of this Agreement to cure that breach, prior to instituting any court action.

27.     Failure by the United States to enforce any provision or deadline of this Agreement shall not be construed as a waiver of its right to enforce other provisions or deadlines of the Agreement.

28.     In consideration for the promises of McDonald's in this Agreement, the Department shall take appropriate steps to dismiss the Lawsuit with prejudice as to McDonald's only within 10 days after the effective date of this Agreement, with each party bearing its own costs, expenses and attorney's fees.  The United States and McDonald's shall execute the Stipulation of Dismissal which is attached hereto as Exhibit 2 and will seek to have the court enter an Order of Dismissal in substantially the same form as the draft Order of Dismissal that is attached hereto as Exhibit 3.  Such dismissal shall not affect the validity or enforceability of the Consent Decree as to Tillman and Century Management.  Nothing contained in this Settlement Agreement is intended or shall be construed as a waiver by the United States of any right to institute any proceeding or action against McDonald's, Tillman or Century Management for violations of any statutes, rules or regulations administered by the United States or to prevent or limit the right of the United States to obtain relief under the ADA, or any federal statutes or regulations, or on account of any violation of this Agreement or any other provision of law; provided, however, that if McDonald's is not in breach of this Agreement, the United States shall not file a subsequent action against McDonald's pursuant to the ADA concerning the restaurants specified in the Consent Decree, relating to alleged barriers to access in existence at the time of the filing of the complaint in the Lawsuit.

## G.    Public Agreement

29.     A copy of this Agreement or any information contained herein may be made available to any person.

10

## H.    Miscellaneous Matters

30.    This Agreement and, as to Tillman and Century Management, the Consent Decree constitute the entire agreement between the United States on one hand and McDonald's, Tillman and Century Management on the other hand, relating to the Lawsuit and Department of Justice No. 202-72-23, and no other statement, promise, or agreement, either written or oral, made by any party hereto or agent of any party, that is not contained in this written Agreement, including its Attachments, shall be enforceable.

31.    Paragraphs 1-21 and 26-39 of this Agreement can be modified only by a writing signed by the Department and McDonald's, and Paragraphs 22-25 can be modified only by a writing signed by McDonald's, Tillman and Century Management.

32.    The failure or invalidation of any provision or portion of a provision of this Agreement shall not affect the validity of this Agreement or its remaining portions, unless their enforcement would substantially impair the purpose of this Agreement.

33.    Section titles and headings in this Agreement are included only for ease of reference and shall have no substantive effect.

34.    All notices, demands or other communications to be provided pursuant to this Agreement shall be in writing and shall be sent by certified mail, return receipt requested, by fax or by recognized overnight courier service.  Notice shall be effective four days after being mailed, the day a fax is sent (provided the sender obtains a fax confirmation sheet showing the fax was received), and the day after a package is sent by courier for next day delivery.  Notice shall be sent to the following persons and addresses (or such other persons and addresses as any party may designate from time to time):

11

   a.  For notices to the Department of Justice:

John L. Wodatch, Esq.
Katherine M. Nicholson, Esq.
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
1425 New York Ave., NW
Washington, D.C.  20005
(202) 616-2313
(202) 305-9775 (fax)

Gary A. Vanasek, Esq.
Harriet Miller Halmon, Esq.
U.S. Attorney's Office
167 N. Main St., Suite 800
Memphis, TN  38103
(901) 544-4231
(901) 544-4303 (fax)

   b.  For notices to McDonald's:

Brett G. Rawitz, Esq.
McDonald's Corporation
2915 Jorie Blvd.
Dept. 146
Oak Brook, IL  60523-1900
(630) 623-3596
(630) 623-5684 (fax)

with a copy to:

Mark L. Shapiro, Esq.
Holland & Knight LLP
131 S. Dearborn St.
30th Floor
Chicago, IL  60603
(312) 578-6521
(312) 578-6666 (fax)

12

    c.  For notices to Tillman:

    Mr. Fred Tillman
    5645 Murray Rd.
    Memphis, TN  38119
    (901) 767-9330
    (901) _____ (fax)

    with a copy to:

    Thomas Henderson, Esq.
    Lewis, Fisher, Henderson, Claxton & Mulroy LLP
    6410 Poplar Ave.
    Ste. 300
    Memphis, TN  38119
    (901) 767-6160
    (901) 767-7411 (fax)

    d.  For notices to Century Management

    5645 Murray Rd.
    Memphis, TN  38119
    Attn:  Fred Tillman
    (901) 767-9330
    (901) _____ (fax)

    with a copy to:

    Thomas Henderson, Esq.
    Lewis, Fisher, Henderson, Claxton & Mulroy LLP
    6410 Poplar Ave.
    Ste. 300
    Memphis, TN  38119
    (901) 767-6160
    (901) 767-7411 (fax)

35.    All terms of this Agreement shall be binding on, and inure to the benefit of, the successors or assigns of any party.  In the event McDonald's seeks to transfer or assign all or part of its interest, if any, in any facility covered by this Agreement, and the facility is intended to continue in use as a McDonald's brand restaurant or another brand of quick service restaurant, as a condition of sale, transfer or assignment, McDonald's shall obtain the written accession of the

successor, transferee or assign to any obligations remaining under this Agreement for the remaining term of this Agreement, and upon obtaining such accession, McDonald's shall be relieved of further obligation under this Agreement as to such facility.

36.    Each person signing on behalf of the government or a corporation or limited liability company represents that he or she is authorized to bind that entity to this Agreement.

37.    Four originals of this Agreement shall be executed and shall become effective on the date of the last signature below.  This Agreement may be executed in counterparts, all of which shall constitute one and the same agreement.  This Agreement shall terminate upon the earlier of (a) the completion of all Modifications as set forth in the Consent Decree, or (b) the expiration or dissolution of the Consent Decree (but in no event later than forty-two months from the effective date of this Agreement), except that Paragraphs 21-25, 29, 30, 34, 35, 36, 38 and 39 shall survive the termination of this Agreement.

38.    The United States does not assert that the Consent Decree and the Modifications required by it necessarily bring the restaurants covered by the Consent Decree into compliance with all aspects of the ADA, and nothing in the Consent Decree is intended to constitute an interpretation of the legal requirements of the ADA by the United States.  Likewise, the entry of the Consent Decree and the making of this Agreement do not constitute an admission of liability or fault on the part of Tillman, Century Management, or McDonald's.  Rather, the Consent Decree is entered into and this Agreement is made for the purpose of compromising disputed claims and avoiding the time, expenses and risks of litigation.  The Consent Decree and this Agreement also are not intended to reflect any interpretations of the ADA by Tillman, Century Management or McDonald's.  Neither the Consent Decree nor this Agreement shall be used or

14

introduced as evidence in any other case or proceeding other than a proceeding by the United States to enforce the Consent Decree against Tillman or Century Management or a proceeding by the United States or McDonald's to enforce this Agreement, as the case may be.

39.     The United States agrees not to be a party to any lawsuit or proceeding or to assess or require any other penalty, payment or action except as set forth in the Consent Decree and this Agreement, against any one or more of Tillman, Century Management or McDonald's or their successors and assigns under Title III of the ADA affecting the architectural accessibility to individuals with disabilities of the 28 restaurants that are referred to in the Restaurant List that is part of the Consent Decree.   Any changes in Title III of the ADA, the Department's regulations, the ADA Standards for Accessible Design, or otherwise that are made after the date of this Agreement and that change or allegedly change the meaning or requirements of the ADA or its application to the restaurants that are the subject of the Lawsuit shall not change this Agreement, provided that at McDonald's option with the consent of Tillman and Century Management any such changes in such statute, regulations, Standards or otherwise may amend this Agreement, and at the option of Tillman and Century Management with the consent of McDonald's, may amend the Consent Decree.

FOR THE UNITED STATES

ALBERTO R. GONZALEZ
Attorney General

BRADLEY J. SCHOLZMAN
Acting Assistant Attorney General
Civil Rights Division

JOHN L. WODATCH, Chief
KATHERINE M. NICHOLSON, Trial Attorney
Disability Rights Section – NYA
Civil Rights Division

U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

TERRELL L. HARRIS
United States Attorney

By: _____
GARY A. VANASEK
HARRIET MILLER HALMON
Assistant U.S. Attorneys
167 N. Main St., Suite 800
Memphis, TN 38103

Date: _____


FOR McDONALD'S CORPORATION

By: _____
VIVIAN L. ROSS
Vice President

Date: _____


FOR FRED TILLMAN

_____
FRED TILLMAN

Date: _____


FOR CENTURY MANAGEMENT

By: _____
FRED TILLMAN

_____

Date: _____


16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 94 in
case 2:03-CV-02061 was distributed by fax, mail, or direct printing on
November 15, 2005 to the parties listed.

---

Gary A. Vanasek
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Mark L. Shapiro
HOLLAND & KNIGHT LLC
131 S. Dearborn St.
Ste. 3000
Chicago, IL 60603

Melissa Kimberly Hodges
LEWIS FISHER HENDERSON CLAXTON & MULROY
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Thomas L. Henderson
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Harriett M. Halmon
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Alexandra S. Gruber
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Keith D. Frazier
OGLETREE DEAKINS NASH SMOAK & STEWART
424 Church St.
Ste. 800
Nashville, TN 37219

Ralph F. Boyd
U.S. DEPARTMENT OF JUSTICE
P.O. Box 66400
Washington, DC 20035--640

Honorable Bernice Donald
US DISTRICT COURT